**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

No. 70–347.

United States District Court,
E. D. Pennsylvania.

Jan. 9, 1973.

**1118**

Carl Helmetag, Philadelphia, Pa., for trustees.

Alan Fellheimer, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for indenture trustees.

## MEMORANDUM AND ORDER
## NO. 1073

FULLAM, District Judge.

The Trustees have filed a petition (Document No. 4696) seeking leave to grant to Austin E. Knowlton Company a six-month option to purchase 4.339 acres of real estate in the City of Columbus, Franklin County, Ohio, for a total price of $825,000. As consideration for the option, the optionee would pay $10,000, to be credited on account of the purchase price if the option is exercised, otherwise to be retained by the Trustees.

At the hearing on the petition, there was no objection to the proposed transaction. The sole dispute concerns the disposition of the proceeds.

The property in question is not encumbered by any mortgages, but is subject to certain liens for real estate taxes, and to the general lien of trustees' certificates, guaranteed by the United States government. The Trustees propose to pay off the real estate tax liens, and to use the balance of the proceeds to reimburse the Debtor's general funds for certain additions and betterments made by the Trustees since bankruptcy for the benefit of other unencumbered assets of the Debtor.

The proposed payment of real estate taxes is not objected to by anyone. The United States government has not objected to the proposed sale or to the Trustees' proposed use of the proceeds. However, certain indenture trustees, and the New Haven Trustee (hereinafter collectively referred to as "respondents") contend that the proceeds should be deposited in escrow subject to the liens of the trustees' certificates.

In an earlier, virtually identical, transaction (Order No. 903, as amended by Order No. 917), this Court approved a sale of unmortgaged real estate and authorized the Trustees to retain the proceeds in the general fund of the Debtor. However, this was done without substantial objection from anyone. The issues now raised have not heretofore been squarely presented for decision.

It is conceded that the respondents have no present lien on the real estate, and could claim no present lien for themselves against the proceeds. Their objections to the Trustees' proposal fall into two categories: First, they contend that to approve the Trustees' petition would be to authorize the dissipation of a capital asset to support deficit operations, a kind of "cannibalization" that is impermissible in the absence of firm assurance of successful income-based reorganization of the railroad. Second, invoking principles of marshalling, the respondents argue that, if the Trustees' request is granted, there will be $800,000 less available to pay off the trustees' certificates (which prime respondents' liens on other property) than would be the case if the funds were to be held in escrow; if the funds are not escrowed, this Court should now declare that the ultimate enforceability of the government's lien with respect to mortgaged property is reduced by the amount of the proceeds.

█ In my view, a correct evaluation of the weight of these arguments must begin with recognition of the fact that, since bankruptcy, the Trustees have,

without objection and with the approval of this Court, made capital improvements to other unencumbered property of the Debtor, and have expended $2,867,188 of operating revenue for that purpose (affidavit of Paul R. Ness). Secured creditors, whether their liens are directly or only indirectly affected, have no right to insist that their lien values be increased through the expenditure of operating revenues. Thus, viewing all phases of these transactions as a unit, it is clear that the Trustees propose simply to convert an unproductive capital asset into other capital assets which make a significant contribution to the earning power of the Debtor's estate.

If follows from this analysis that neither of the arguments advanced by the respondents is acceptable. There is no dissipation of capital assets, no cannibalization. And the lien of the trustees' certificates is as applicable to the substituted assets as to the original asset.

In other contexts, the respondents have asserted that the cost of additions and betterments is not necessarily a proper measure of their value as security for liens. It may be that a similar contention is implicit in their present argument. Such an argument could conceivably involve several complex issues, such as the correct interpretation of, and the weight to be accorded to, relevant terms of various mortgage indentures; and whether liquidation value or "going concern" value would be the proper yardstick. But I do not believe it is necessary to explore these issues in depth in connection with the present application. If the proposed transaction is consummated, the Trustees will be crediting approximately $800,000 against additions and betterments which recently cost $2,867,188. It seems clear that, whatever valuation approach may be adopted, these improvements have value greatly in excess of the amount of the proceeds here involved.

■ With regard to the respondents' second line of argument, that they are entitled to protection against the potential dilution of their security, several points should be made. In the first place, as noted above, there is no reduction in the quantity of unmortgaged capital assets available for the satisfaction of the trustees' certificates. Moreover, insofar as this real estate is concerned, the respondents have, at most, the status of general creditors. *See* In re Chicago, Rock Island & Pacific Ry., 50 F.Supp. 835, 863 (N.D.Ill. 1943). Actually, the respondents would seem to be merely contingent general creditors, in the absence of proof that their own liens are inadequately secured. As the respondents' brief recognizes, their argument would be significant only if (a) the railroad is liquidated; (b) remaining unencumbered assets are insufficient to liquidate the trustees' certificates; and (c) the encumbered assets are insufficient to discharge the balance of the trustees' certificates, administration claims, and respondents' liens. There is no realistic basis for such morbid conjectures. It is the function, and intention, of this Court to make certain that the ultimate outcome of this reorganization, whatever form it may take, is consistent with the legal and constitutional rights of all parties involved. And, apart from any action which the Court might undertake on its own initiative, if the point is ever reached that there is a genuine threat of infringement upon the vested rights of the parties, I am confident that prompt and forthright legal steps would be taken by the parties threatened. In the absence of present justification for anticipating any such stark eventuality, the Trustees should not be deterred from implementing prudent business decisions.

■ The Trustees have an obligation to protect the interests of creditors. They also have an obligation to "make additions to take care of public needs or to lower operating costs." RFC v. Denver, Rio Grande & Western RR., 328 U.S. 495, 515, 66 S.Ct. 1282, 1293, 90 L.Ed. 1400 (1946). The transactions here proposed are consistent with both of these objectives, and are in the best interests

of all parties. The petition will be granted.

### ORDER

And now, this 9th day of January, 1973, upon consideration of the "Petition of the Trustees for Authority to Grant an Option to Purchase Real Estate in Columbus, Ohio," and upon hearing duly noticed, it is ordered:

1. The Trustees or their duly authorized designees are hereby authorized to grant an option on the property referred to for the consideration and on the terms set forth in the Petition, and if the option is exercised, the Trustees are authorized to convey to Austin E. Knowlton Company, or its nominee, at private sale and free and clear from all liens, the property referred to for the consideration and on the terms set forth in the Petition.

2. The Trustees or their duly authorized designees are authorized to execute and deliver any documents necessary to effectuate such transaction.

3. If the option is exercised, the net proceeds of such sale, after deduction of expenses of sale, shall be divided as follows:

A. Upon approval of the necessary officers of the County of Franklin, State of Ohio, a sum equal to sixty percent (60%) of the principal amount of taxes that are unpaid and a lien on the property shall be paid to Franklin County, Ohio in complete discharge of all tax claims or tax liens against the property, including any claim for interest and penalty; but if the approval of the necessary officers of the County of Franklin is not obtained, then an amount equal to the tax liens on the property shall be placed in escrow and all liens on the property conveyed pursuant to this Order shall attach to said funds, and any interest or income earned thereon, in the respective order of priorities thereof.

B. The balance of the net proceeds of such sale shall be kept in a special account and used by the Trustees to reimburse their general funds for additions and betterments previously or hereafter made on unmortgaged property owned by the Trustees.

C. The Trustees are directed (1) to keep separate records showing the amount in the fund, if any, the amount expended for additions and betterments on unmortgaged property, and the amount the Trustees have been reimbursed for expenditures or additions and betterments on unmortgaged property; and (2) to make such records available for inspection to parties in these proceedings upon such parties' request.